UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PRINELL HARRIS (Minor Child); GRACE JOHNSON Parental Guardian & Next Friend of PRINELL HARRIS,<br><br>Plaintiffs,<br><br>v.<br><br>LARRY BROWN in his Individual/Personal Capacity and in his Official Capacity as a DeKalb County School Teacher et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:20-CV-02320-JPB |

## ORDER

This matter is before the Court on Larry Brown, Thaddeus C. Dixon and Dr. R. Stephen Green's (collectively, "Defendants") Motion for Judgment on the Pleadings [Doc. 7]. This Court finds as follows:

### FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Prinell Harris and Grace Johnson (collectively, "Plaintiffs") allege that on September 3, 2015, Harris was a student at Miller Grove Middle School. [Doc. 1-1, p. 5]. While attending a class taught by Brown, Plaintiffs contend that Harris became engaged in an altercation with another student named Elijah. Id.

Specifically, Plaintiffs assert that Elijah confronted Harris at Harris's desk, pushed Harris's things to the floor and then shoved Harris. Id.

According to Plaintiffs, Brown was slow to intervene in the altercation. Id. Plaintiffs allege that when Brown finally addressed the altercation between the two students, Brown grabbed Harris by the neck and shoulders and then slammed Harris's head down on the desktop. Id. at 6. Plaintiffs further allege that after Brown removed Harris from the classroom, Elijah followed, at which point Elijah punched Harris in the head. Id.

Plaintiffs originally sued Defendants on September 1, 2017, in the Superior Court of DeKalb County. Id. at 1. Citing the doctrines of sovereign immunity and official immunity, Dixon and Green moved to dismiss the original the suit. Id. at 36-42. After the motion was granted in part and denied in part, Plaintiffs voluntarily dismissed their original action.

Pending before this Court is Plaintiffs' renewal action, titled "Complaint for Assault, Battery, Intentional Infliction of Emotional Distress, Malicious Prosecution & Violations of ADA" ("Complaint"), which was filed on March 30, 2020, in the Superior Court of DeKalb County and removed to this Court on May 29, 2020. [Doc. 1]. In the Complaint, Plaintiffs bring various state law claims (assault, battery, intentional infliction of emotional distress, malicious prosecution,

negligence and breach of ministerial duties) and a single federal claim that asserts a violation of Title II of the Americans with Disabilities Act ("ADA") and a violation of § 504 of the Rehabilitation Act ("§ 504"). On June 9, 2020, Defendants filed the instant Motion for Judgment on the Pleadings. [Doc. 7].

## ANALYSIS

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014) (citation and punctuation omitted). When a district court analyzes whether a party is entitled to judgment on the pleadings, it must "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." Id.

1. ADA and § 504 Claim

The Court will begin its analysis with Plaintiffs' federal claim, which includes a violation of the ADA and § 504. Plaintiffs allege that Defendants violated the ADA because "students with disabilities are allotted special disciplinary procedures based upon their disabilities," which includes a behavior intervention plan, non-violent crisis intervention strategies and restraint techniques, and when Harris was slammed into his desk, he was not afforded those special

3

disciplinary procedures.  [Doc. 1-1, p. 9].  As to § 504, Plaintiffs allege that Defendants discriminated against Harris based solely upon his disability by denying him access to the same benefits or services afforded to other children and "by using body slamming to punish him when they did not use this method of punishment with non-disabled children."  Id. at 10.  Plaintiffs then allege that Harris was denied a "public education free from abuse, excessive and unduly severe punishment, and one free from a denial of his constitution[al] and statutory rights[.]"  Id.  Finally, Plaintiffs conclude that the "body slamming" of Harris contradicted any form of behavior intervention plan or any form of nonviolent crisis intervention training and/or training methods utilized by teachers within the field to restrain students.  Id. at 10-11.  Plaintiffs appear to bring this federal claim against Brown, in both his individual and official capacities, Dixon, in his official capacity, and Green, in his official capacity.

      Defendants, who filed their motion jointly, argue that Plaintiffs cannot assert an ADA or § 504 claim against Brown in his individual capacity.  They are correct.  ADA and § 504 claims are improper against an individual defendant like Brown.  See, e.g., Hammonds v. DeKalb Cnty., No. 4:16-BE-1558-M, 2017 WL 1407461, at *2 (N.D. Ala. Apr. 20, 2017) (denying a motion for reconsideration of claims against defendants in their individual capacities because "only public entities may

be liable under Title II of the ADA and § 504 of the Rehabilitation Act, and any amendment of those claims asserted against the individuals would be futile"); Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1139-40 (N.D. Ga. 2016) (finding that the plaintiffs failed to state a claim for individual liability under the ADA because the defendant was not an employer, a private entity operating a public accommodation or an individual accused of retaliation); J.D.P. ex rel. Pope v. Cherokee Cnty., Ga. Sch. Dist., No. 1:08-cv-165, 2009 WL 10700207, at *19 (N.D. Ga. Mar. 23, 2009) (concluding that the plaintiffs failed to state a claim because "individuals may not be held personally liable for violating the substantive provisions of either § 504 or the ADA"); Rylee v. Chapman, No. 2:06-cv-0158, 2008 WL 3538559, at *6 (N.D. Ga. Aug. 11, 2008), aff'd, 316 F. App'x 901 (11th Cir. 2009) ("[I]nsofar as Plaintiffs bring claims against … individual Defendants under the ADA, those claims are due to be dismissed" because "Title II of the Disabilities Act provides a cause of action only against a 'public entity' and not an individual acting under color of state law."). Accordingly, Plaintiffs' federal claim against Brown in his individual capacity is **DISMISSED**.

The official capacity claims brought against Defendants are, in reality, claims against the DeKalb County School District. See Robinson v. Smith, No. 4:14-CV-149 (CDL), 2015 WL 4193269, at *1 (M.D. Ga. July 10, 2015) (holding

5

that "claims against the school officials in their official capacities are deemed claims against the School District."). See also Jude v. Morrison, 534 F. Supp. 2d 1365, 1371 (N.D. Ga. 2008) (recognizing that "suing a person in his official capacity is simply an alternative method of suing the governmental entity itself"). Although the DeKalb County School District was not named as a defendant in this action, to avoid confusion, this Court construes Plaintiffs' claims against Defendants, in their official capacities, as claims against the DeKalb County School District.

Defendants argue that Plaintiffs' federal claim brought pursuant to the ADA and §504 is subject to dismissal because: (1) Plaintiffs failed to exhaust their administrative remedies; and (2) Plaintiffs insufficiently alleged discriminatory intent necessary to state a claim for relief. In response, Plaintiffs merely argue that the Superior Court of DeKalb County previously declined to dismiss the federal claim, and this Court should do the same.

The Court will first address whether Plaintiffs' federal claim is subject to dismissal based on Plaintiffs' failure to exhaust administrative remedies under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Three different statutes are typically implicated by those suing a school district: (1) the IDEA; (2) the ADA; and (3) § 504. The IDEA, which has an exhaustion

6

requirement, "offers the States federal funds in exchange for a commitment to provide all children with disabilities individually tailored special education, also known as a free appropriate public education or FAPE." Durbrow v. Cobb Cnty. Sch. Dist., 887 F.3d 1182, 1189 (11th Cir. 2018) (citations and punctuation omitted).  On the other hand, the ADA and § 504 "forbid discrimination on the basis of disability in the provision of public services." C.H. ex rel. Hilligos v. Sch. Bd. of Okaloosa Cnty., Fla., No. 3:18cv2128/MCR/HTC, 2019 WL 4774042, at *18 (N.D. Fla. Sept. 30, 2019).  Notably, there is some overlap in coverage between the ADA, § 504 and the IDEA, and the same conduct may violate all three statutes.  Fry v. Napoleon Cnty. Schs., 137 S. Ct. 743, 756 (2017).  Because of this overlap, the IDEA's exhaustion requirement sometimes applies to claims brought pursuant to the ADA or § 504 even where the plaintiff does not assert an IDEA claim.  Id.  Before a plaintiff files a civil action under the ADA or § 504 to obtain "relief that is also available under the IDEA," the plaintiff must exhaust administrative remedies "to the same extent as would be required had the action been brought under the IDEA." 20 U.S.C. § 1415(l); see also Fry, 137 S. Ct. at 746.

Whether a plaintiff must first administratively exhaust claims under the ADA or § 504 depends on the basis of the claim.  Exhaustion is not necessary

when the gravamen of the plaintiff's suit is something other than the denial of a FAPE. Fry, 137 S. Ct. at 748. The Supreme Court of the United States has given guidance on how courts can determine whether the "gravamen" of a complaint charges the denial of a FAPE. The Supreme Court first suggests looking to the complaint itself. Id. at 755. The Supreme Court also advises answering the following two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

Id. at 756. If these questions result in affirmative responses, the essence of the claim likely does not involve the denial of a FAPE. Durbrow, 887 F.3d at 1190. Finally, the Supreme Court instructs the court to look at "the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute." Fry, 137 S. Ct. at 757.

Starting first with Plaintiffs' Complaint, as Fry instructs, this Court notes several allegations of significance. First, the Complaint identified that Harris was entitled to protection under the IDEA. The Complaint also referenced an Individualized Education Plan ("IEP") and denial of due process rights associated

with the IDEA. Referencing these terms signals to the Court that this action is about the denial of a FAPE. As to the ADA, Plaintiffs asserted that the body slamming was a direct violation of the ADA because Harris was denied his right to special disciplinary procedures (like a behavior intervention plan, non-crisis intervention strategies and restraint techniques)—disciplinary procedures he is entitled to because of his disability. Here, Plaintiffs have not alleged that Brown violated Harris's rights in general. Instead, Plaintiffs' Complaint focused on how Brown's actions did not comport with "any form of behavior intervention plan." [Doc. 1-1, p. 10]. Plaintiffs clearly alleged that Harris was entitled to certain disciplinary procedures, and that when he was body slammed, he was denied those procedures. Importantly, Plaintiffs' allegations of abuse are specifically tied to his IEP and the failure to follow certain disciplinary procedures. In other words, Plaintiffs essentially contended that the abuse allegedly inflicted upon Harris was part of a misguided attempt at classroom discipline. Ultimately, after considering the Complaint, this Court finds that Defendants' obligation to provide a certain kind of discipline to Harris based on the IEP is squarely within the IDEA's guarantee to provide a FAPE, and therefore exhaustion of the ADA and § 504 claim is required. See J.M. ex rel. McCauley v. Francis Howell Sch. Dist., 850 F.3d 944, 949 (8th Cir. 2017) (determining that the plaintiff's claim that the school

district imposed physical discipline prohibited by his IEP was subject to the IDEA's exhaustion requirement).  See also A.H. ex rel. H.C. v. Craven Cnty. Bd. of Educ., No. 4:16-CV-282-BO, 2017 WL 3493612, at *4 (E.D.N.C. Aug. 14, 2017) (finding that the IDEA's exhaustion requirement applied to allegations involving incidents of physical abuse when the abuse was the result of improper "de-escalation techniques" required by a student's IEP).

The Court's conclusion that Plaintiffs' Complaint concerns the denial of a FAPE, and thus is subject to the exhaustion requirement, is supported by the pair of hypothetical questions provided by the Supreme Court in Fry—i.e., whether Plaintiffs could have brought essentially the same claim if the conduct occurred outside of a school and whether an adult at the school could have brought the same claim.  The answer to both questions is no.  As framed by Plaintiffs, this case involves discipline of a student in a way contrary to the student's IEP.  Claims such as this can only arise in a school setting for a student.  Discipline is not implemented on adult employees or visitors to the schools nor is discipline implemented on minors in other public institutions.  For instance, a store owner or public library is not permitted to discipline a child who is misbehaving.  The conduct alleged in Plaintiffs' Complaint is unique to a disabled student at the

school, which indicates that "the complaint probably does concern a FAPE, even if it does not explicitly say so." Fry, 137 S. Ct. at 756.

Finally, the Court will consider the history of the proceedings. As stated previously, pending before the Court is Plaintiffs' renewal action. Importantly, in Plaintiffs' original action, Plaintiffs brought a claim for violation of the IDEA. Because Plaintiffs previously asserted an IDEA claim, it is a sign that "the gravamen of [the] suit is the denial of a FAPE." See id. at 757.

Ultimately, after considering Plaintiffs' Complaint, the hypothetical questions and the case history, this Court finds that Plaintiffs seek relief available under the IDEA—namely, the denial of a FAPE to Harris by failing to discipline him in accordance with the IEP. Because Plaintiffs failed to exhaust this claim, it is **DISMISSED**. Accordingly, as to this ground, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

2. State Law Claims

Plaintiffs also asserted numerous state law claims against Defendants. Currently, this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). When the district court has dismissed all claims over which it has original jurisdiction, as it has here, "[t]he district courts may decline to exercise supplemental jurisdiction" over the remaining state law claims. 28 U.S.C. §

1367(c)(3).  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088 (11th Cir. 2004).  Typically, "[s]tate courts, not federal courts, should be the final arbiters of state law."  Baggett v. First Nat'l Bank, 117 F.3d 1342, 1352 (11th Cir. 1997).

Given the early stage of these proceedings (pre-trial and before commencement of discovery) and the fact that state law claims are best resolved by state courts, this Court declines to exercise its supplemental jurisdiction.  This Court finds that judicial economy, fairness, convenience and comity dictate having these state law claims decided by the state courts.  See id. at 1353.

## CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART** Defendants' Motion for Judgment on the Pleadings [Doc. 7].  Plaintiffs' federal claim is **DISMISSED**.  The state law claims are **REMANDED** to the Superior Court of DeKalb County.

**SO ORDERED** this 25th day of February, 2021.

J. P. BOULEE
United States District Judge